CARR, J.
The act of 1784 certainly gave the county courts no power to purchase ground for the erection of the hemp warehouses. It seems from the orders of Henrico court, that, in the commencement, it intended only to have the buildings erected, after the owner of the lot refused to undertake them ; but it *446 is equally clear to me, that after the buildings were put up, the court found it could make no terms with the owner of the lot, short of paying him the full price of the fee; and then it decided (as in common sense *and reason it must) that if the public was to pay the full value, it would buy the lot; and, therefore, in its order of January 1787, it directed the treasurer to pay Lewis ;£145. for the lot, on which the hemp warehouses stand agreeably to the valuation thereof made and returned. This speaks as plainly (to my understanding) as language can, that this money was paid (not for an easement, a privilege, or any thing, but) for the lot itself, which lot had been valued. And on a copy of this order, the treasurer took a receipt for the ;£145. as paid “for the lot.” If in this purchase and payment, the court and the treasurer overstept the limits of their power, it was surely competent to the assembly to ratify their acts ; and the maxim tells us omnis ratihabitio retro-habitur atque mandato asquiparatur. This sanction the legislature has given, I think, 1st, by taking and holding many years under, the purchase, and 2ndly, by the act of 1816, expressly recognizing it as public property then in possession of the commonwealth, putting it under the superintendence of the executive, and directing the sale of it, and the application of the purchase money. It will be remarked, that both instructions of the circuit court, excepted to by the plaintiff, are predicated on the jury’s being satisfied, by the evidence stated or any other evidence, that the commonwealth took possession of the lot, under the contract, and held it till the plaintiff entered upon it; and of this the jury must have been satisfied or they could not have found for the defendants. I feel justified, then, in taking it as proved, that rhe possession of the commonwealth, was of the lot itself, claiming it as public property. And this being so, I am very clear, that the plaintiff could not lawfully enter upon the commonwealth. Such an entry seems utterly incompatible with the idea of sovereignty which belongs to the state.. The citizen'who claims land of which the state is in possession adversely, must resort to his petition of right, and if he enter illegally, upon her, may properly be ousted, as Young was in this case. Thinking, then, that the record shews a case, in which the plaintiff could in no *event be entitled to recover; though I may not in all respects agree with the instructions given to the jury, I am for affirming the judgment.
GREEN, J.
I think that both the instructions of the court excepted to by the plaintiff, were substantially right, but for a reason different from those assigned by the court below.
The case is shortly this : The commonwealth had been in possession of the lot "in question ever since 1784, under a contract made with the proprietor thereof, by the county court of Henrico, acting professedly on behalf of the commonwealth, and which was executed by the payment of the money, the consideration of the contract, by the treasurer, upon the warrant of the auditor. The county court had no authority to make any contract with him in respect to the lot, nor had the auditor and treasurer any authority to pay the money for the commonwealth. And it does not appear, that the proprietor entered into any written contract in respect to the property, or made any conveyance. The legislature, however, ratified and adopted the contract, whatever it was, and the payment of the money, by the act of 1816, claiming it to be a purchase in fee simple, placing this lot, with all the other public property in Richmond, under the care and control of the executive, and directing the lot to be sold. Whether this contract was a sale and purchase of an easement or of the absolute property, was properly left to the jury, upon the evidence. But, whether it was of the one or the other character, the possession of the commonwealth under it, and the ratification of it, and the claim made to hold the lot absolutely by the act of 1816, did not vest any legal title whatever in the commonwealth: that remained in the proprietor. The plaintiff claiming under him, entered upon the property, and in a few days was expelled from it by the defendants acting under the orders of the executive. The commonwealth, however, acquired by this possession, and ratification óf, and claim under,'the contract, all the right which an individual could have acquired *under similar circumstances ; that is, an equitable right to the easement, or to the property itself, as the case might be. Tor, the ratification of a contract made by a stranger in the name of another, confers upon that other all the rights which he would have acquired, if he had been an original party to the contract. And if it be true, that the commonwealth can acquire no right or property but by virtue of some legislative act, that circumstance is found in the act of 1816.
The court below held, that under such circumstances, an individual purchaser, in possession under a contract of sale, having paid the purchase money, might defend his possession against the vendor, or enter upon him if he regained the possession ; and that the commonwealth had the same rights. This was a mistake ; such a possession, not being adverse, even if exceeding twenty years, could not be set up against the legal title in a court of law for any purpose. And even if such a possession of twenty years could operate between individuals, it could not as between the commonwealth and an individual; for she can neither disseise nor be disseised by any one.
There is, however, another principle of the common law, which barred the right of entry of the plaintiff, and justified his expulsion by the public officers entering under the orders of the executive charged by statute with the care and control of this property specifically. There would be an extreme inconvenience, if an individual were allowed, at his own pleasure, to enter- upon the possession of the commonwealth, whenever it happened that property in her possession, was held under a defective title, and he was its legal owner, and to hold her out until the mischief could be remedied by an appropriate legislative act, giving compensation and condemning the property for public use, or till.the question of right could be investigated and settled in a due course *447 of law. If such a right was allowed, in respect to property in the possession of the commonwealth, though not in actual use, it must extend to those cases in which it is in her actual occupation, for purposes indispensible, as the *capitol, barracks, armory, arsenals, and the like. I am confident no government in the world allows the existence of such a right in individuals. It certainly was not allowed by the common law : for, in England, if property is in possession of the king, in his political capacity, without title, the true owner cannot regain the possession by entry, but must resort to his petition. 9 Vin. Abr. Disseisin, D. pi. 19, p. 96. And the same remedy exists here, both as at common law and under our statutes. Upon this ground, I think the instructions were right, and that the judgment should be affirmed.
BROOKE, P.
The commonwealth can acquire, or assert or defend, her rights to property, only through her agents. In this respect the commonwealth holds a position as to her property, and the manner of acquiring it and defending it, somewhat different from a natural person. In the acquirement of land, it is not necessary that the title should pass to her by deed, in the ordinary forms of law, as in the case of a natural person. It has been her practice, justified by the acts of the legislature, to acquire title to land, by the contracts of her agents designated by law for that purpose, and the payment of the purchase money, as in the case before us. That it has been her practice to acquire lands in the mariner stated, is evidenced by the circumstance, that none of the acts of the legislature, authorizing the purchase of land for any public purpose, have provided any other mode by which title to the same was to be acquired ; no regular conveyance of. the title from the vendor - ever being provided for, nor any organ of the government designated to receive it; and the payment of the purchase money having been, it seems, the only requisite to consummate the tiile of the commonwealth, under purchases made by her agents. That the commonwealth holds a position with regard to her title to property, differing from that of a natural person, results from the circumstance, that she can only act by her agents, and is otherwise intirely passive. Thus, no time runs against "her rights. She cannot be a disseisor or a disseisee, though her agents may be both ; and if they act with good faith and under her authority, she makes herself responsible for the consequences. In this view of the rights and condition of the commonwealth, the case before us will be examined.
And the first inquiry is, as to the right of the commonwealth to the lot, on which the trespass complained of is alleged to have been committed by the appellees. On the sound construction of the act of 1784, I think it must be admitted, that the county court of Henrico was not authorized to purchase for the commonwealth, the fee simple interest in the lot in question. But upon the facts of the case, I think it can yet less be doubted, that the court of Henrico did, in fact, purchase for the commonwealth, the fee simple title to the property ; that its purchase was consummated by the payment of the purchase money to Lewis the vendor, by the authorized agents of government for that purpose ; and that, though the county court of Henrico was not authorized by the act of 1784, to make the purchase, yet the purchase was, by those acts, ratified by the commonwealth, and gave her the absolute legal title to the property.
The next inquiry is, as to the character of the possession of the commonwealth, at the time the supposed trespass was committed by the defendants, and into the authority by which they entered upon the lot, and the justification of that entry. As to the character of the possession, the facts are, that in .pursuance of the object of the act of 1784, a warehouse for the inspection of hemp, was erected on the premises ; that there was a regular inspection of hemp established there, and conducted according to law, until about the year 1797, when the inspection was discontinued ; that the warehouse was soon afterwards removed ; and that, after that period, there was no actual occupancy of the lot by any one, until the plaintiff, more than thirty years after the title and possession of the commonwealth accrued, entered upon it, and enclosed it ; a few days after which, the supposed trespass was committed by the entry of the defendants, and ouster of the plaintiff, under the authority of the executive. *Upon these facts, collected from the bills of exceptions filed in the cause, and others that will be noticed, the correctness of the instructions given by the circuit court to the jury, is to be tested. In doing this, I premise, that if the circuit court stated the law upon the case in evidence, to the jury, more unfavorably to the defendants than to the plaintiff, it is not for the latter to object. And that, I think, was clearly the case. Upon a very argumentative statement of the evidence, on which the instruction was asked for by the counsel for the plaintiff, in the first bill of exceptions, the judge instructed the jury, that if they should be of opinion, from the terms of the bargain appearing from the evidence there stated, or any other evidence in the cause, that it was the intention of the proprietor to part with the possession of the lot itself (though he never conveyed the same to the commonwealth, or made any formal contract in writing to convey), and that the agent of the commonwealth, in conformity with that intention, did take possession of the lot itself; the commonwealth ought to be protected in that possession, to the same extent as an individual would be protected who should have purchased the lot, paid his money, and became possessed thereof. This part of the instruction, I think, was most favorable to the plaintiff : the court might have instructed the jury, on the facts stated, that no deed or formal conveyance from the proprietor to the commonwealth, was necessary ; and that the commonwealth, upon the facts admitted as the ground on which the instruction was asked for, had an absolute legal title to the property, and full right to the possession of it, when its agents entered upon it, built the warehouse, and established the inspection *448 of hemp, as an individual would have had under a conveyance from the proprietor,'followed by similar acts, instead of leaving1 it to the jury, whether the proprietor intended to part with the possession, either from the terms of the bargain, or any other evidence. The error in this part of the instruction, then, was favorable to the plaintiff, and cannot be objected to by him. The remainder of the instruction I think was correct enough: it was, that the actual *possession by the commonwealth for a series of years will enable the commonwealth to maintain trespass, or to defend herself in an action of trespass, and further that the commonwealth being once in possession of the lot itself, must be presumed to continue in possession until actual ouster, notwithstanding the removal of the hemp warehouse, and the discontinuance of the inspection on the premises. However this might have been as to an individual (which it is not necessary hereto decide), asno time runs against the commonwealth, this was, as before remarked, correct enough.
The only remaining question is, whether the instruction stated in the third bill of exceptions, which was asked by the defendants, given by the court, and excepted to by the plaintiff, was correct ? That instruction, I think, though in some respects erroneous, was more favorable to the plaintiff than the defendants : it admits a mere right in the property intirely incompatible with the absolute title, which was in the commonwealth ; and, as no time runs against the commonwealth, and as her possession was adverse to the title of G. M. Lewis at the time when the deed from him, under which the plaintiff claims, was executed, that deed passed no title to the plaintiff, even if G. M. Lewis had title; but, in truth, he had no title; and he was sensible he had none, as appears by the deed itself. The title was vested in the commonwealth, in the manner before stated. As to the previous part of the instruction ; it is certainly well settled law, that a party having title to the possession may enter upon it, and defend that entry in an action of trespass against him ; and if so, where he uses no force, he may also justify his entry in an action of trespass, though he may have used force, for which he may be prosecuted criminally. As to the authority of the executive, under the act of 1816, placing the public property in Richmond under its care, and as to the authority of the defendants under the order of the executive; both were left to the jury, and must be presumed to have been proved by proper evidence, or the plaintiff would have excepted to it) The judgment is affirmed.